IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
ENTERED
OCT 2 3 2013
David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| BRENT A. CARTER, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil No. B-09-99 |
| | § | |
| WESTPORT INS. CORP., | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This case concerns the extent of coverage of a professional liability insurance policy issued by Westport Insurance Corporation ("Westport") to the insurance agency Smith-Reagan & Associates, Inc. ("Smith-Reagan"). Plaintiff Brent A. Carter ("Plaintiff" or "Carter"), an employee of Smith-Reagan, was a defendant in an action filed by Valley Baptist Health System ("Valley Baptist") ("the underlying lawsuit"), in which Valley Baptist alleged that Carter and another insurance agent, Michael N. Swetnam, individually and d/b/a Swetnam Insurance Services, had defrauded Valley Baptist into paying premiums for non-existent policies, as well as excess commissions hidden within inflated premiums on another two, otherwise legitimate, policies.[1] Valley Baptist sought to recover compensatory damages—specifically, the return of the full premium amounts for the non-existent policies and the return of the amounts by which the premiums for the legitimate policies had been inflated. Additionally, under certain causes of action, Valley Baptist sought interest, exemplary damages, and attorneys' fees. When Westport

---

[1] Case No. 2008-04-2584-E; *Valley Baptist Health System v. Michael Swetnam Jr., Individually and Doing Business as Swetnam Insurance Services and Brent A. Carter* in the 357th Judicial District Court of Cameron County, Texas. According to the parties, this case, in pertinent part, settled on December 8, 2011 during the actual trial.

1

refused to defend him in the underlying suit, Carter instigated the current action in state court, seeking damages, pre-judgment interest, a declaratory judgment that Westport was obligated to defend and indemnify him for the costs incurred in defending the Valley Baptist suit and any resulting damages. Westport timely removed the matter to this Court.

This is the second in a series of competing summary judgment motions with which this Court has been faced. In the first set, similar to the current set, this Court was asked to resolve whether Carter was a proper insured under the policy given the then-existing allegations made by Valley Baptist in its First Amended Petition. This Court held that, given the allegations at the time that Carter was not an "insured" as defined by Westport's policy, the company had no duty to defend him.

In the current summary judgment motion, Carter seeks a ruling that Westport was obligated to defend and indemnify him in the Valley Baptist suit under the terms of the professional liability insurance policy Westport had issued to his employer, Smith-Reagan. As before, Westport cross-moved for summary judgment seeking a declaration that Westport has no duty to defend Carter in the underlying suit because Carter is not an "insured;" that Westport has no duty to defend or indemnify Carter because the claims asserted against him by Valley Baptist are excluded from coverage; and that an insurer cannot be liable for extra-contractual claims for denying a claim that is not covered by the relevant insurance policy.

I.  BACKGROUND

   A. Factual Background

Westport issued professional liability insurance Policy Number WED4TX006532302, a "claims made" policy in effect from April 1, 2008 to April 1, 2009, to Smith-Reagan. This policy was to cover any "'loss' for which the insured is legally liable caused by a 'wrongful act'

2

committed by an insured arising out of 'professional services' rendered to others." [*See* Doc. No. 46-2 at 15]. "Insured" was defined in the policy to include Smith-Reagan's "employees and former employees but only for acts within the scope of their employment by [Smith-Reagan] and while performing duties related to the conduct of [Smith-Reagan's] insurance operations." [*Id.* at 16]. The term "wrongful act" was defined to mean "any negligent act, error, omission or 'personal injury' of an insured or any person for whose acts the insured is legally liable in rendering services for others." [*Id.* at 18]. In addition to the duty to indemnify an insured for such a loss, Westport agreed to undertake the "duty to defend, investigate, and conduct any settlement negotiations arising from 'claims' first made based upon alleged 'wrongful acts' of an insured."[2] [*Id.* at 16].

Specific provisions that excluded certain "claims" from coverage under the policy limited these general terms outlining coverage. Most notably for the purposes of this suit, the following two categories of "claims" were excluded:

> This "policy" shall not apply to any "claim" based upon, arising out of, attributable to, or directly or indirectly resulting from:
>
> G. PERSONAL PROFIT. Any insured having gained, in fact, any personal profit or advantage to which he or she was not legally entitled.
>
> ***
>
> C. FUNDS. "Claims" for commissions, fees, taxes, reimbursement, or the failure to collect, pay, or return premiums or commingling of funds.[3]

---

[2] A "claim" includes "summons . . . [or] notice of any 'suit.'" A "suit" is any "civil proceeding alleging 'loss' against an insured for a 'wrongful act.'"

[3] While these exclusions are the subject of extensive briefing by both sides in the pending cross-motions, this Court will not address these issues in this Order.

3

[*Id.* at 8 & 17]. On February 4, 2009, Valley Baptist filed its First Amended Petition in state court against Carter and Michael N. Swetnam ("Swetnam"), individually and d/b/a Swetnam Insurance Services. [*See* Doc. No. 12-2]. The gravamen of Valley Baptist's suit was the return of funds it had paid to Swetnam, who "paid the money he received from Valley Baptist to himself and to Carter . . . for non-existent and inflated premiums . . . ." [*Id.* ¶ 2]. Specifically, Valley Baptist alleged that two insurance policies from 2006-2007 and 2007-2008 (the "Hurricane Policies"), for which Valley Baptist had remitted funds as premium payments to allegedly protect against hurricane damage, were entirely fabricated. Another two umbrella policies from 2006-2007 and 2007-2008 (the "Zurich Policies"), issued by Zurich Health Care, were also allegedly misrepresented and their premiums inflated to hide excess commissions, but were otherwise legitimate. According to Valley Baptist, Swetnam had collected the funds from it and split the fabricated and/or inflated premium amounts with Carter.[4] The First Amended Petition alleged various causes of action against Swetnam including violations of the Texas Insurance Code, the Texas Theft Liability Act, conversion, fraud, negligent misrepresentation, and breach of contract. As against Carter, the First Amended Petition alleged only negligence. It also specifically and unequivocally asserted that "the insurance agent services at issue in this First Amended Petition were presented, invoiced and allegedly confirmed solely by Swetnam, or by Carter on behalf of Swetnam Insurance Services." [*Id.* ¶ 13]. This was the pertinent state of affairs at the time this Court granted the first summary judgment referenced above.

Valley Baptist later amended its state court petition several times. In its Fourth Amended Petition, [*see* Doc. No. 46-2], filed on September 7, 2011, Valley Baptist maintained its prior

---

[4] Valley Baptist's First Amended Petition included certain allegations with respect to another two insurance policies, for which Valley Baptist alleged that defendant Swetnam had also fabricated premiums. [*See* Doc. No. 12-2 at 12-13]. The Court declines to discuss these allegations further, as they pertained solely to defendant Swetnam in the underlying lawsuit and not to Carter, the only Plaintiff now before this Court.

4

factual allegation that the insurance agent services at issue "were presented, invoiced and allegedly confirmed solely by Swetnam, or by Carter on behalf of Swetnam Insurance Services [,]" but inserted for the first time the following sentence at the end of the allegation: "However, according to Carter, all of Carter's actions at issue in this case were performed in the course and scope of his employment with Smith-Reagan and not on behalf of Swetnam Insurance Services." [*Id.* ¶ 13]. On November 4, 2011, Valley Baptist filed its Fifth Amended Petition without making any substantial changes to this particular language. Both the Fourth and Fifth Amended Petitions alleged that Carter (or Carter and Swetnam) was liable for violations of the Texas Insurance Code, conversion, "money had and received," fraud, fraud by non-disclosure, negligent misrepresentation, conspiracy, breach of contract, and negligence.

Valley Baptist then filed its Sixth Amended Petition, [*see* Doc. No. 46-6], on December 7, 2011, in which Valley Baptist amended the preceding language to read as follows: "The insurance agent services at issue in the Sixth Amended Petition were presented, invoiced and allegedly confirmed by Swetnam or Carter. However, all of Carter's actions at issue in this case were performed in the course and scope of his employment with Smith-Reagan and not on behalf of Swetnam Insurance Services." [*Id.* ¶ 13]. This final amended petition maintained that Swetnam and Carter had split the fabricated and/or inflated premium amounts allegedly pertaining to the Hurricane and Zurich policies, but its factual allegations as against Carter alone differed between these two policy categories. With respect to the Hurricane policies, Valley Baptist alleged that "Carter improperly retained such payment that he knew or should have known was for a non-existent insurance policy." [*Id.* ¶ 22 (2007-2008 Hurricane policy); *id.* ¶ 29 (2006-2007 Hurricane policy)]. With respect to the Zurich policies, in addition to alleging that Carter maintained funds that "he knew or should have known was for unauthorized 'excess

commissions,'" [*id.* ¶ 34 (2007-2008 Zurich policy); *id.* ¶ 39 (2006-2007 Zurich Policy)], the Sixth Amended Petition unequivocally stated that "Swetnam, with Carter's knowledge, participation and consent, improperly inflated" the premium amounts, [*id.* ¶ 32 (2007-2008 Zurich policy); *id.* ¶ 36 (2006-2007 Zurich Policy)].

Based on these factual allegations, in the Sixth Amended Petition, Valley Baptist asserted against Swetnam alone the following causes of action: violations of the Texas Insurance Code and the Texas Theft Liability Act, conversion, fraud, and fraud by non-disclosure. Valley Baptist additionally accused both Carter and Swetnam of negligence and/or negligent misrepresentation. As part of its pleading for negligent misrepresentation, Valley Baptist repeated the allegation that "Swetnam, with Carter's knowledge, participation and consent, inflated the Zurich Policies premiums charged to Valley Baptist by hiding 'excess comissions' within the total premium amounts." [*Id.* ¶ 76]. Valley Baptist claimed monetary damages totaling $3,844,519.42 for both its simple negligence and negligent misrepresentation claims against Carter.[5] In addition to recovery of the monetary damages outlined above, Valley Baptist sought to recover exemplary damages "[b]ased on Swetnam's knowing misrepresentations" pursuant to Section 541.152 of the Texas Insurance Code, [*id.* ¶ 82], attorney's fees pursuant to Chapters 38 and 134 of the Texas Civil Practice & Remedies Code as well as Section 541.152 of the Texas Insurance Code, court costs, and pre- and post-judgment interest. On December 8, 2011, the day after Valley Baptist filed this last amended petition, Valley Baptist and Carter settled their dispute.

---

[5] In virtually every petition, Valley Baptist sought $3,844,519.42 in damages. This represented either the return of premiums and commissions for non-existent insurance policies or the return of the excess premiums unjustly charged. It can be broken down as $2,024,519.42 relating to the Zurich policies and $1,820,000 relating to the Hurricane policies (and a $1.00 mathematical error).

6

## B. Procedural Background

Carter instigated the current action in state court in February 2009, after Westport had refused to defend him against the claims asserted in Valley Baptist's First Amended Petition. Westport removed the case based upon diversity of citizenship. [*See* Doc. No. 1-2].[6] In essence, Carter alleged that Westport's refusal to defend him in the Valley Baptist suit was in contravention of the terms of the professional liability insurance policy that Westport had issued to Carter's employer, Smith-Reagan. In the instant case, he asserts causes of action against Westport for negligence, breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. In his prayer for relief, Carter requests: (1) a declaration that Westport was obligated to defend and indemnify him in the underlying lawsuit under the terms of the professional liability insurance policy WED4TX006532302; (2) actual damages; and (3) pre-judgment interest.

As described above, both Westport and Carter have previously cross-moved for summary judgment before this Court. [*See* Doc. Nos. 12 & 13]. In April 2010, this Court denied Plaintiff's motion and granted in-part Defendant's motion. [*See* Doc. No. 23]. The Court applied the "eight-corners rule" and found that "Carter [did] not qualify as an insured under the terms of the First Amended Petition [filed by Valley Baptist in state court] because the First Amended Petition itself specifically and exclusively pleads that the complained-of actions performed by Carter were only done on behalf of Swetnam Insurance Services." [*Id.* at 6]. The Court thus held that Westport had no duty to defend Carter in the Valley Baptist lawsuit. [*Id.* at 9]. It deferred ruling on Westport's duty to indemnify based on its conclusion that the issue was prematurely before the Court. [*Id.* at 8].

---

[6] Carter had originally included Michael N. Swetnam as an in-state defendant. This Court dismissed him as being improperly joined. [*See* Doc. No. 6].

7

Following the entry of the above Order, Carter filed an Unopposed Motion to Stay, which the Court granted. [*See* Doc. Nos. 27 & 28]. The Court ordered the current proceeding stayed until "(1) any amendment of the pleadings . . . which a party contends would result in a change to the Court's [April 2010] ruling, . . . or (2) trial and final judgment in the underlying [Valley Baptist lawsuit]." [Doc. No. 28]. Carter moved to lift the stay on September 19, 2011, [*see* Doc. No. 29], on the basis that Valley Baptist's Fourth Amended Petition in the underlying lawsuit "would result in a change to the Court's ruling on a duty to defend[,]" [*id.* at 3]. The Court granted Plaintiff's motion and gave Carter leave to file a second motion for partial summary judgment on the duty to defend based on Valley Baptist's new amended pleading. [*See* Doc. No. 30]. At an earlier hearing, the Court denied all pending summary judgment motions without prejudice to be re-filed. Carter then filed a new motion for partial summary judgment on the duty to defend, in which Carter alleged that the duty to defend under the policy was triggered by Valley Baptist's Fourth Amended Petition, and that the "funds" and "personal profit" exclusions quoted above did not apply to the "claims" asserted by Valley Baptist against him. [*See* Doc. No. 46]. Westport cross-moved for summary judgment, arguing that the Fourth Amended Petition did not trigger a duty to defend, and that it neither had the duty to defend nor indemnify Carter because (1) considering Valley Baptist's pleadings, he was still not an "insured" under its policy; (2) all of Valley Baptist's claims were excluded from coverage; (3) all of Carter's actions were intentional and, therefore, not covered; and (4) Westport could not be held liable on extracontractual claims for having legitimately denied a claim for coverage under its professional liability insurance policy. This opinion addresses the first issue.

## II. STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). To defeat summary judgment, the nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Id.* at 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On cross-motions for summary judgment, each party's motion is reviewed "independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994)). "Summary judgment is appropriate where the only issue before the court is a pure question of law." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 450 (5th Cir. 2008) (quoting *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991)).

## III. DISCUSSION

### A. Duty to Defend

#### 1. Applicable Law

A federal court sitting pursuant to diversity jurisdiction is required to apply substantive state law when adjudicating state law claims. *LeMeilleur v. Monumental Life Ins. Co.*, 419 F. App'x 451, 453 (5th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In Texas, "when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant." *Gore Designs Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008) (quoting *GuideOne Elite Ins. Co. Fielder Rd. Baptist Church*, 197 S.W.3d 305,

307 (Tex. 2006)). This rule, typically referred to as the "eight corners" or "complaint-allegation" rule, dictates that only two documents are germane to an insurer's duty to defend: the insurance policy and the third-party's pleadings in the underlying suit. *See GuideOne Elite*, 197 S.W.3d at 308. When a third party plaintiff amends a complaint in the underlying suit, the third-party's latest amended pleading controls. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Canutillo Indep. Sch. Dist. V. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996) (applying Texas law)). The insured carries the initial burden of proving that the third-party's pleadings potentially include a covered cause of action under the terms of the policy. *See Loving Home Care*, 363 F.3d at 528; *Nat'l Fire Ins. Co. v. Entm't Specialty Ins. Servs., Inc.*, 485 F. Supp. 2d 737, 740-41 (N.D. Tex. 2007) (citing *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141). "[T]o defeat the duty to defend, the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Loving Home Care*, 363 F.3d at 528.

An insurer's duty to defend is triggered by factual allegations that potentially support a covered claim under the policy. *See Gore Design*, 538 F.3d at 368 (quoting *GuideOne Elite*, 197 S.W.3d at 310)). Pleadings are to be given a liberal construction. *Id.* at 368-69. "[I]n cases of doubt whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Id.* at 369 (citing *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). When considering the pleadings, the court must disregard the truth or falsity of the allegations; "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination . . . ."

10

*Id.* Courts may also not read facts into the pleadings or imagine factual scenarios to trigger coverage, *id.*, but may "draw inferences from the petition that may lead to a finding of coverage[,]" *id.* (quoting *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs.*, 252 S.W.3d 450, 456 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Additionally, the court "must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. of Tex., Inc.*, 939 S.W.2d 139, 141-42 (Tex. 1997) ("Although the pleadings allege that Hart *negligently* discharged the firearm, we must focus our review on the pleading's factual allegations, not on the legal theories asserted."); *see also Gore Design*, 538 F.3d at 369. "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Loving Home Care*, 363 F.3d at 528 (citing *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).

Texas courts construe insurance policies in accordance with the general rules of contract interpretation. *See Am. Mfrs. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197 (5th Cir. 2012) (applying Texas law). In Texas, "[t]he primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). *See SA-OMAX 2007 L.P. v. Certain Underwriters at Lloyd's, London*, 374 S.W.3d 594 (Tex. App.—Dallas 2012, no pet.) (citing *Gilbert Tex. Constr. L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)) ("When interpreting an insurance policy, courts apply the general rules of contract construction to ascertain the parties' intent."). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *Schaefer*, 124 S.W.3d at

11

157. The court may not alter plain, definite and unambiguous contractual terms, which must be enforced as they are written in the contract. *Nat'l Am. Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 611 (E.D. Tex. 2005) (citing *Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 407 (5th Cir. 1995) (citing *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993))). Whether a contract is ambiguous in the first instance, however, is a question of law for the court. *See Schaefer*, 124 S.W.3d at 157. "An ambiguity does not arise simply because the parties offer conflicting interpretations." *Id.* A contract is ambiguous "only if the contract language is susceptible to two or more reasonable interpretations." *Id.*

Ambiguities present in insurance policies, when compared to the third party's pleadings, must also be construed in favor of the insured. *See Likens*, 688 F.3d at 199; *SA-OMAX 2007 L.P.*, 374 S.W.3d at 598. *See also Breaux*, 368 F. Supp. 2d at 612 (citing *Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co.*, 141 S.W.3d 198, 201 (Tex. 2004)) ("Under Texas law, the maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured."). This is especially true when the ambiguity is in an exclusion from coverage, where the court "must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *SA-OMAX 2007 L.P.*, 374 S.W.3d at 598 (quoting *Balandran v. Safeco Ins. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)). *See also Likens*, 688 F.3d at 199 ("If the insured's construction of an ambiguous exclusionary provision is reasonable, the court must adopt it, even if it is not the most reasonable position." (internal quotation marks omitted)). In addition, the court must strive to give effect to all contractual provisions, so as to not render any portion of the contract meaningless. *See Schaefer*, 124 S.W.3d at 157.

### 2. Definition of "Insured"

This Court has previously granted summary judgment in favor of Westport on this issue. [*See* Doc. No. 23]. Its prior ruling was based on an application of the eight-corners rule, which compared Smith-Reagan's professional insurance policy to Valley Baptist's First Amended Petition. The insured named under the policy is Smith-Reagan, but the policy provides coverage for any of Smith-Reagan's employees "for acts within the scope of their employment by [Smith-Reagan] and while performing duties related to the conduct of [Smith-Reagan's] insurance operations." [*See* Doc. No. 46-2]. In light of this definition of "insured," the Court's earlier conclusion that Carter did not qualify as an insured was based on the following critical language in Valley Baptist's then-live pleading: "Upon information and belief, the insurance agent services at issue in this First Amended Petition were presented, invoiced and allegedly confirmed *solely* by Swetnam, or by Carter *on behalf Swetnam Insurance Services*." [Doc. No. 12-2 ¶ 13 (emphasis added)]. Valley Baptist's allegation that Carter was acting solely in the scope of his involvement with Swetnam Insurance Services, and, therefore, not in connection with his employment with Smith Reagan, precluded Westport from having a duty to defend Carter.

Carter now contends that Valley Baptist's pleadings in its Fourth Amended Petition in the underlying suit were sufficient for this Court to find that Carter qualified as an insured. In the Fourth Amended Petition, the critical language identified above was not deleted or amended. Instead, there was the addition of the following sentence after the allegation: "However, according to Carter, all of Carter's actions at issue in this case were performed in the course and scope of his employment with Smith-Reagan and not on behalf of Swetnam Insurance Services." [Doc. No. 46-3 ¶ 13]. This addition is simply insufficient for this Court to find that a duty to defend existed at the time of the filing of this pleading. The eight-corners rule instructs the court

13

to compare the *factual allegations* made by the plaintiff to the terms governing coverage in the policy. Valley Baptist's recitation of Carter's insistence that he was acting within the scope of his employment with Smith-Reagan, and not Swetnam Insurance Services, is simply not a factual allegation made by the plaintiff.

This conclusion is further bolstered by Valley Baptist's amendments to this language in its Sixth Amended Petition, filed on December 7, 2011. [*See* Doc. No. 46-6 ¶ 13].[7] The critical language in that petition reads as follows: "However, all of Carter's actions at issue in this case were performed in the course and scope of his employment with Smith-Reagan and not on behalf of Swetnam Insurance Services." [*Id.*]. Clearly, Valley Baptist knew how to factually allege that Carter was acting within the scope of his employment with Smith-Reagan because Valley Baptist did so in its Sixth Amended Petition. The Court accordingly finds that Carter qualified as an insured under the policy based on Valley Baptist's factual allegations in the Sixth Amended Petition, but not under any prior petition.

The Court notes that neither Carter, in contending that the additional sentence in the Fourth and Fifth Amended Petitions triggers coverage, nor Westport, in contending that it does not trigger coverage, have cited this Court to any remotely relevant authority. Nor has this Court found any case or authority that it finds controlling. Nevertheless, the Court finds that the available authorities that generally govern pleadings would indicate that Westport's policy was not implicated by the mere recitation of Carter's position in the Fourth and Fifth Amended Petitions.

One looks first to the actual language of the pleadings in question. The Fourth and Fifth Amended Petitions state in pertinent part:

---

[7] The Fifth Amended Petition parroted the Fourth Amended Petition quoted in pertinent part in the text.

> At various times, insurance agent services were provided to Valley Baptist solely by Smith-Reagan, solely by Swetnam, or collectively by Smith-Reagan and Swetnam. <u>The insurance agent services at issue in this Fifth Amended Petition were presented, invoiced and allegedly confirmed by Swetnam or Carter on behalf of Swetnam Insurance Services</u>. However, according to Carter, all of Carter's actions at issue in this case were performed in the course and scope of his employment with Smith-Reagan and not on behalf of Swetnam Insurance Services.

[Doc. Nos. 46–3 & 46–5 (emphasis added)]. The Sixth Amended Petition indicates a radical shift in paragraph 13:

> At various times, insurance agent services were provided to Valley Baptist solely by Smith-Reagan, solely by Swetnam, or collectively by Smith-Reagan and Swetnam. The insurance agent services at issue in this Sixth Amended Petition were presented, invoiced and allegedly confirmed by Swetnam or Carter. <u>However, all of Carter's actions at issue in this case were performed in the course and scope of his employment with Smith-Reagan and not on behalf of Swetnam Insurance Services</u>.

[Doc. No. 46–6 ¶ 13].

In the Fourth and Fifth Amended Petitions, and in all prior petitions, Valley Baptist alleged and maintained that all of Carter's illicit activities were done on behalf of Swetnam Insurance Services. Nowhere in those petitions is there any allegation that Carter acted inappropriately while acting for Smith-Reagan, the named insured in the policy. In fact, Valley Baptist expressly alleged that he acted inappropriately while working on behalf of Swetnam Insurance Services. The additional reference as to what Carter thought (contained in the Fourth and Fifth Amended Petitions) is, at worst, a mere aside and, at best, presages a possible defense. It is not an allegation made by the plaintiff against the defendant.

> One must remember that Smith-Reagan's contract with Westport compels Westport to:
>
> > . . . pay on behalf of the insured "loss" for which the insured is legally liable caused by a "wrongful act" committed by an insured arising out of "professional services" rendered to others.

[Doc. No. 46–2 at 15.]

15

No wrongful act of an insured is alleged in the Fourth and Fifth Amended Petitions. The named insured is Smith-Reagan & Associates, Inc. Under the policy, "employees and former employees" of the named insured are also insureds, "but only for acts within the scope of their employment duties related to the conduct of [Smith-Reagan's] insurance operations."

The only allegation made by Valley Baptist that Carter committed any untoward acts "while performing duties related to the conduct" of Smith-Reagan's insurance business is in the Sixth Amended Petition, which states:

> . . . all of Carter's actions were performed in the course and scope of his employment with Smith Reagan and not on behalf of Swetnam Insurance Services.

[Doc. No. 46–6 ¶ 13]. This was not only the first time such an allegation was made, but it clearly indicated a sea change by the plaintiff. Previously, Valley Baptist had always specifically alleged that Carter's misdeeds were done on behalf of Swetnam Insurance Services.

The Court should also note that this one brief description in an amended petition of one of Carter's positions hardly qualifies as an alternative pleading. Alternative pleading, while well-recognized by Texas courts, requires the pleader to at least set out an alternative claim or defense. This one sentence does not.

Initially, it does not set out a claim whatsoever, unless it is a claim of Carter's. The purpose of pleadings is to give the parties notice of claims, defenses and relief sought. *Perez v. Briercroft Service Corp.*, 809 S.W.2d 216, 218 (Tex. 1991); *Vaughn v. Drennon*, 202 S.W.3d 308, 314 (Tex. App.—Tyler 2006, no pet.). The pleading in the instant case only informs the reader that Valley Baptist thinks that Carter will assert, or has asserted, that he was working for Smith-Reagan. This does not comply with even the barest requirements of a notice pleading as a claim by Valley Baptist. It is clear that the drafters of the Fourth and Fifth Amended Petitions

went to great lengths to allege that Carter's involvement was not when he was acting for Smith-Reagan.

The instant case is factually similar to *Wortham v. Dow Chemical Co.*, 179 S.W.3d 189 (Tex. App.—Houston [14th Dist.] 2005 no pet.)—a decision authored by Judge Guzman who currently sits on the Supreme Court of Texas. In that case, the plaintiffs sued Dow Chemical Co., as the successor in interest to Dow Badische, the plaintiff's long time employer. "There were no specific—nor general—allegations against Dow . . . all references to Dow were only as successor in interest to Dow Badische." *Id.* at 193. After the Court granted summary judgment in favor of Dow, the plaintiff claimed on appeal that the judgment did not dispose of all claims against Dow. The court of appeals pointed out that Dow was only sued as "successor to Dow-Badische;" therefore, there were no direct allegations against Dow.

> Appellants construe their pleadings to assert general allegations against all the "defendants" named. However, appellants named Dow only as a successor-in-interest to Dow Badische. <u>We do not construe appellant's pleadings to have asserted all general allegations against Dow.</u>
>
> Texas follows a "fair notice" standard for pleading. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex.2000); *see also* TEX.R. CIV. P. 45. Generally, a pleading provides fair notice of a claim when an opposing attorney of reasonable competence can examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony. *Auld*, 34 S.W.3d at 896; *State Fid. Mortgage Co. v. Varner*, 740 S.W.2d 477, 479 (Tex.App.-Houston [1st Dist.] 1987, writ denied). In determining whether a cause of action has been pleaded, the court must be able, "from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty the elements of a cause of action and the relief sought with sufficient particularity upon which a judgment may be based." *Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex.App.-Eastland 2004, pet. denied) (citing *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex.1979)). The court looks to the pleader's intent and will uphold the pleading as to a cause of action even if some element of that cause of action has not been specifically alleged. *See Auld*, 34 S.W.3d at 897. Petitions are construed liberally in favor of the pleader. *See id.* (noting that if no special exceptions are filed, courts should construe pleadings liberally in favor of the pleader). But, "liberally" does not require a court to read into a petition what is plainly not there. *See Toles v. Toles*, 113 S.W.3d 899, 911 (Tex.App.-Dallas 2003, no pet.).

> Here, in their second amended petition, appellants named Dow as a defendant in its capacity as the successor-in-interest to Dow Badische. <u>There were no direct allegations against Dow contained in that pleading</u>.

*Id.* at 198–199 (emphasis added).

In the instant case, not only was an allegation triggering any duty under the Westport policy absent; but, more importantly, the only allegation that Valley Baptist did make was mutually exclusive to a claim that would trigger coverage. No claim was made by Valley Baptist for any "loss" allegedly caused by a person who qualifies as an insured under the Westport policy. Valley Baptist still contended that all of Carter's wrongdoing was done "on behalf of Swetnam Insurance Services." Consequently, there was no duty to defend or indemnify Carter for any claim emanating from either of the Fourth or Fifth Amended Petitions.

Westport's Motion for Summary Judgment as to any alleged duties triggered by the Fourth and Fifth Amended Petitions in the underlying lawsuit is hereby **GRANTED**. Conversely, the Motion for Summary Judgment filed by Carter is hereby **DENIED** as to claims arising under these two Petitions.

Signed this 23rd day of October, 2013.

Andrew S. Hanen
United States District Judge